J-S30042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| SHAWN WILLIAMS | : | |
| Appellant | : | No. 3084 EDA 2024 |

Appeal from the PCRA Order Entered October 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012558-2010

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED SEPTEMBER 8, 2025**

Appellant, Shawn Williams, appeals, *pro se*, from the order of the Court of Common Pleas of Philadelphia County, dismissing as untimely his second petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.* The trial court previously found him guilty of rape, unlawful contact with a minor, unlawful restraint, and endangering the welfare of a child.[1] He asserts, *inter alia*, that the PCRA court erred by dismissing his petition for lack of jurisdiction based on his failure to plead and prove the applicability of exceptions to the PCRA's time-bar for his substantive claim concerning a police misconduct disclosure notice that the Commonwealth sent

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 6318(a)(1), 2902(a)(1), and 4304(a)(1), respectively.

him. We vacate the October 15, 2024 order and remand this case for further proceedings in accordance with this memorandum.

On direct review, we summarized the facts of this case as follows:

The victim, A.H., was thirteen years old on August 17, 2010, the day of the attack. [On t]he evening of August 16, 2010, A.H. was at the Philadelphia[, Pennsylvania] home [that] her sister, [M.K.], shared with her husband, Appellant[,] and their baby daughter. At approximately 11:00 p.m., Appellant and [M.K.] began to argue, and[,] about one hour later, Appellant evicted [M.K.] from the house. She was not permitted to take either the baby or her sister with her.

A.H. was watching television with her niece. Shortly after [M.K.] left, A.H. put her niece to bed. As A.H. was returning to the first floor to turn off the television, Appellant came into the hallway. A.H. described what occurred next, as follows. Appellant "grabbed my right arm and had pulled me into the [bed]room, and he put both hands on my shoulder[s] and pushed me on the bed." A.H. told him to "get off" and pushed him away. Appellant rebuked the child's attempt to avoid the attack. A.H. testified that she refused Appellant's demand to remove her clothing, so Appellant "took them off for me. I kept trying to pull them up." Appellant inserted his finger into the victim's vagina, and then placed his mouth on her vagina. A.H. continued to push and scratch Appellant and tell him to get off her. Appellant ignored A.H., and then inserted his penis into her vagina. A.H. said, "It hurt and it was a lot of pressure." A.H. reported that the pain from Appellant's penis was a nine on a scale of one to ten. Appellant also placed a pillow over A.H.'s face, and she ceased screaming at him.

When Appellant stopped his assault, A.H. dressed herself and retrieved her niece, who had been crying and screaming during the crime. She went downstairs with the child and began to watch television. Then, Appellant "came downstairs and said if I tell anybody, he's going to kill me[,] and he said that he's going to kill my family." Eventually, A.H. fell asleep in her niece's room.

A.H.'s mother came to pick her up at approximately 7:00 a.m. on August 17th. After Appellant left the house, A.H. immediately told her mother about the assault, and they went to the police station.

Police transported the victim to the hospital, where she was physically examined. Her vagina still hurt and she "could[ not] use the bathroom." A.H. reported that, at the hospital, the pain continued to be a nine.

There were various stipulations entered into evidence after A.H. testified[ at trial]. At the hospital, "doctors found two bilateral lacerations that were .5 centimeters a piece on the complainant's labia[.]" A rape test kit was administered at the hospital, the hospital gave the kit to the Special Victims' Unit, and the kit was lost by the unit. Thus, there was no results from the rape kit admitted into evidence. The victim's clothing had no fluids or hair upon which a DNA test could be performed. Appellant's sheets were taken from the residence but not tested.

Finally, it was stipulated that two police officers proceeded to Appellant's residence and waited in their car to watch the house. "They observed [Appellant] walk up to the front porch of the property, look around, and then begin walking" away. Police followed Appellant in their car, and Appellant began to run away. He was apprehended after a brief pursuit.

*Commonwealth v. Williams*, 2014 WL 10885747, *1-2 (Pa. Super., filed Aug. 28, 2014) (unpublished memorandum) (2388 EDA 2012) (record citations omitted; additional formatting included in brackets).

Appellant waived his right to be tried by a jury and proceeded by bench trial on May 24-25, 2011. *See* N.T. Trial, 5/24/11, 5-11. The Commonwealth presented testimony from A.H. and entered into the above-mentioned stipulations. *See id.* at 13-37, 72-77. Appellant presented testimony from the victim's mother, T.M., and the victim's sister, M.K., and testified on his own behalf. *See id.* at 78-97; N.T. Trial, 5/25/11, 6-18, 28-41. The parties stipulated that Appellant had a *crimen falsi* conviction. *See* N.T. Trial, 5/25/11, 53. At the end of the two-day trial, the court found Appellant guilty of the above-referenced offenses. *See id.* at 72. On July 11, 2012, the court

sentenced Appellant to an aggregate sentence of fifteen to thirty years' imprisonment, including a mandatory minimum ten-to-twenty-year imprisonment term for rape and a consecutive five-to-ten-year imprisonment term for unlawful contact with a minor. *See* Order (sentencing), 7/11/12, 1; N.T. Sentencing Hearing, 7/11/12, 35.

Appellant timely appealed and challenged, on direct review, the voluntariness of his jury trial waiver, the weight and sufficiency of the evidence, and the discretionary aspects of his sentence. *See Williams*, 2014 WL 10885747 at *2, *see also* Post-Sentence Motion for Reconsideration of Sentence, 7/20/12; Order (denial of post-sentence motion), 7/26/12, 1; Notice of Appeal, 8/24/12, 1. On August 28, 2014, we affirmed the judgment of sentence. *See Commonwealth v. Williams*, 106 A.3d 179 (Pa. Super. 2014) (table) (2388 EDA 2012). Appellant did not seek further review with our Supreme Court.

On June 15, 2015, Appellant filed a *pro se* first PCRA petition. Thereafter, Appellant retained private counsel who filed a pair of amended PCRA petitions, styled as supplements to the *pro se* petition, in which counsel raised ineffective assistance of counsel claims and proffered that the victim had advised members of her family that she had lied about her allegations of sexual assault against Appellant. *See* Amended PCRA Petition, 12/14/16; Amended PCRA Petition, 1/31/18. With respect to the recantation allegation, the Commonwealth proffered a police statement from the victim stating that she had no intention to recant her trial testimony and alleging that her sister,

- 4 -

who was Appellant's wife, had been threatening to prevent the victim from seeing her own son if she did not recant. *See* Commonwealth Motion to Dismiss, 5/2/18, 2 n.1 & attached Victim Statement, 4/6/18, 1-4 ("she [the sister] has used my son against me as a weapon to get him [Appellant] out … I told her no I told her that I was not [going to] lie."). The PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. *See* Rule 907 Notice, 7/17/18, 1. After Appellant failed to file any response, the PCRA court dismissed the petition for lack of merit. *See* Order (first PCRA petition dismissal), 8/22/18, 1.

Appellant timely appealed, *pro se*, from the dismissal of his first PCRA petition and filed a *pro se* appellate brief even though he was still represented by counsel. ***See Commonwealth v. Williams***, 2019 WL 5431796, *2 (Pa. Super., filed Oct. 23, 2019) (unpublished memorandum) (2825 EDA 2018). Accordingly, we vacated the dismissal order and remanded for a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), to determine the voluntariness of Appellant's waiver of his right to counsel for his collateral appeal. ***See Commonwealth v. Williams***, 222 A.3d 863 (Pa. Super. 2018) (table) (2825 EDA 2018). After the PCRA court granted PCRA counsel permission to withdraw from representation of Appellant, it appointed new counsel for the pending appeal, in which counsel addressed four ineffective assistance of counsel claims. ***See Commonwealth v. Williams***, 2020 WL 2299761, *2-4 (Pa. Super., filed May 7, 2020) (unpublished

- 5 -

memorandum) (2825 EDA 2018).  On May 7, 2020, we affirmed the dismissal.  *See Commonwealth v. Williams*, 237 A.3d 437 (Pa. Super. 2020) (table) (2825 EDA 2018).  Our Supreme Court thereafter denied Appellant's petition for leave to file a petition for allowance of appeal *nunc pro tunc* and a subsequent application for reconsideration.  *See* Supreme Court Order (denial of petition for *nunc pro tunc* leave), 1/27/22, 1 (73 EM 2021); Supreme Court Order (denial of application for reconsideration), 4/13/22, 1 (73 EM 2021).

On June 14, 2022, Appellant filed, *pro se*, a motion requesting DNA testing of the recovered clothing and bed sheets, and the (previously-determined lost) rape kit, along with a supporting memorandum of law.  On August 17, 2022, he filed, *pro se*, a second PCRA petition styled as a request to file a petition for allowance of appeal *nunc pro tunc* with respect to this Court's affirmance of the dismissal of his first PCRA petition.

On May 18, 2023, Appellant filed, *pro se*, an amended second PCRA petition in which he notified the PCRA court of his receipt of a police misconduct disclosure notice, dated April 25, 2023, from the Philadelphia District Attorney's Office.  *See* Amended Second PCRA Petition, 5/18/23, § 5(i).  He alleged that the lost rape kit and a cellphone recording of the victim saying, "I am going to say you raped me[,] beat me, and pushed me down the stairs for hurting my sister," would have proved his innocence, and his discovery that a Sergeant Woltemate of the police Special Victims Unit "was guilty of damage/loss of property in the past," would support claims of

"government[al] interference, [a] **Brady**[2] violation, and [a] violation of [his state and federal] constitutional rights." **See** Amended Second PCRA Petition, 5/18/23, § 6(A), (C).

In the disclosure notice attached to the amended petition, the District Attorney's Office informed Appellant: "Sgt. Joseph Woltemate has been identified as having been a witness or a participant in the police's investigation of [his] case. Sgt. Woltemate has been identified by the [District Attorney's Office] as an officer who may have engaged in misconduct that necessitates disclosure." Police Misconduct Disclosure Notice, 4/25/23, 1 (attached as Exhibit 1 to Amended Second PCRA Petition, 5/18/23). An attachment to the disclosure notice reflected Police Bureau of Investigation findings ("PBI Findings"), after a hearing on April 21, 1988, that a "board" found Sgt. Woltemate guilty of: making a false statement in response to an official departmental investigation; knowingly and willfully making a false entry in any departmental report or record; and loss or damage to police department property resulting from negligent action or from failure to properly care for same. **Id.** at 4 (PBI Findings). Sgt. Woltemate's "total penalty" for these acts was indicated as a ten-day suspension. **Id.**

On July 30, 2024, the PCRA court issued notice of its intent to dismiss the petition as untimely due to Appellant's failure to invoke an exception to the PCRA's time-bar under 42 Pa.C.S. § 9545(b)(1)(i)-(iii). **See** Rule 907

_____

2 **Brady v. Maryland**, 373 U.S. 83 (1963).

Notice 7/30/24, 1. As for his claims in the amended petition, which are the focus of the instant appeal, the PCRA court informed Appellant:

> [T]he disclosure notice alone is not sufficient to demonstrate that the Commonwealth withheld or suppressed evidence, as it does not indicate any active measures taken by the Commonwealth. Relatedly, you contend the Commonwealth suppressed or withheld exculpatory rape kit and cell phone audio/video evidence. These allegations rest on bare assertions without any evidentiary support. In consequence, you fail to plead and prove an exception to the PCRA's timeliness requirement.

*Id.* at 2. The court also noted that Appellant defaulted on his obligation to demonstrate his due diligence in presenting his claims for a time-bar exception: "[Y]ou do not address whether you filed your petition in compliance with 42 [Pa.C.S. §] 9545(b)(2). Specifically, you neglect to articulate the date on which you discovered the purported fact that the Commonwealth suppressed or withheld exculpatory rape kit and cell phone evidence." *Id.*

In a response to the Rule 907 notice, Appellant asserted that he received the police misconduct disclosure notice on April 25, 2023, and that the "material was passed" in the course of his now-stayed federal *habeas* proceeding. Response to Rule 907 Notice, 8/8/24, ¶ 1. He noted that he was seeking an evidentiary hearing "to determine the role played by Sgt. Woltemate in the handling of the rape kit which [he] and his counsel were previously told was misplaced." *Id.* at ¶ 2. Building on that point, he alleged:

> Although the police file has been destroyed due to the age of the case, [Appellant's *habeas*] counsel was able to view [his] discovery on July 17, 2024. Although those files have not yet been received by [his *habeas*] counsel, initial review led to new

information regarding the destroyed rape kit in [his] case. Counsel for [Appellant] is currently working with the District Attorney's Office to try to confirm the full names of those officers who allegedly handled the kit, so as to determine whether or not misconduct disclosures exist for them as well.

*Id.* at ¶ 4. He argued that "the information regarding Sgt. Wolemate's prior suspension falls squarely within the timeliness exception outlined in 42 Pa.C.S. § 9545(b)(1)(ii)." *Id.* at 2. He additionally argued that the Commonwealth committed a ***Brady*** violation "[b]y failing to disclose Sergeant Woltemate's history of false records and losing property[] and securing a favorable stipulation from [his] trial counsel on the basis of incomplete information." *Id.* at 4.

Appellant identified Sgt. Woltemate's role in his case as the officer who approved the 75-49 police department investigation report completed by Detective Laura Hammond, concerning Appellant's arrest and interviews of the victim, the victim's mother, and the victim's sister. ***See*** Response to Rule 907 Notice, 8/8/24, 5; ***see also*** 75-49 Report, 8/19/10, attached as Exhibit 2 to Response to Rule 907 Notice, 8/8/24. Appellant inferred that Sgt. Woltemate's approval of the 75-49 report meant that the sergeant was also tasked with ensuring that the rape kit was collected in this case. ***See*** Response to Rule 907 Notice, 8/8/24, 6. He asserted the fact that the rape kit was alleged to be lost meant that the sergeant "was either derelict in his duty, or something more nefarious [had] occurred," and alleged that the sergeant's "sordid past undermine[d] the Commonwealth's explanation for how potentially exonerating evidence was destroyed before trial" and "call[ed]

into question the series of stipulations which [his] trial counsel made in good faith." Response to Rule 907 Notice, 8/8/24, 6. He proffered a signed affidavit from his trial counsel, alleging that counsel would not have stipulated to the Commonwealth's explanation of what happened to the rape kit if he had known that Sgt. Woltemate had been previously suspended for knowingly and willfully falsifying police records or destroying police property. *Id.* at 6-7; *see also* Trial Counsel Affidavit, 8/19/24, attached as Exhibit 4 to Response to Rule 907 Notice, 8/8/24.

On October 15, 2024, the PCRA court dismissed the second PCRA petition as untimely and denied Appellant's motion for DNA testing pursuant to 42 Pa.C.S. § 9543.1. *See* Order (dismissal of second PCRA petition), 10/15/24, 1. Appellant timely filed a notice of appeal. *See* Notice of Appeal, 11/7/24, 1. The court did not order Appellant to file a concise statement of errors complained pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and instead, *sua sponte*, issued an opinion on the date that it dismissed Appellant's PCRA petition. *See* PCRA Court Opinion, 10/15/24, 1-4.

Appellant presents the following questions for our review:

1.  Whether the PCRA court erred in ruling Appellant's petition [was] untimely under 42 [Pa.C.S.] § 9545(b)(1)(i) and § 9545[(b)(1)](ii)?

2.  Whether the PCRA court erred in denying Appellant's request for an evidentiary hearing, and ruling that Appellant failed to establish "active measures taken by the Commonwealth to conceal information[?"]

Appellant's Brief, 4.

Appellant claims that the PCRA court erred by dismissing his petition as untimely. **See** Appellant's Brief, 8-10. He asserts that he satisfied the time-bar exceptions at 42 Pa.C.S. § 9545(b)(1)(i)-(ii), involving occurrences of governmental inference and newly-discovered facts, based on his receipt of the police misconduct disclosure notice concerning Sgt. Woltemate. **See** Appellant's Brief, 8-10. Accordingly, he asserts that the PCRA court had jurisdiction to review his substantive **Brady** violation claim. **See** Appellant's Brief, 10. He requests this Court to reverse the order dismissing his petition and remand for an evidentiary hearing on his **Brady** claim. **See** Appellant's Brief, 11.

"We review the denial of a PCRA petition to determine whether the records supports the PCRA court's findings and whether its order is free of legal error." **Commonwealth v. Kelsey**, 206 A.3d 1135, 1139 (Pa. Super. 2019). Before addressing any substantive claims for relief on appeal, we must first consider the timeliness of the post-conviction petition at issue because it "implicates the jurisdiction of this Court and the PCRA court." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014). "Our law is clear that the PCRA's time restrictions are jurisdictional in nature, and '[i]f a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims.'" **Commonwealth v.**

***Anderson***, 234 A.3d 735, 737 (Pa. Super. 2020) (quoting ***Commonwealth v. Albrecht***, 994 A.2d 1091, 1093 (Pa. 2010) (citation omitted)).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment [of sentence] becomes final" unless an exception to timeliness applies. 42 Pa.C.S. § 9545(b)(1). Here, Appellant was sentenced on July 11, 2012, and this Court affirmed his judgment of sentence on August 28, 2014. Appellant did not file a petition for allowance of appeal with our Supreme Court. Accordingly, his judgment of sentence became final on September 29, 2014, upon the expiration of the thirty-day deadline for filing a petition for allowance of appeal on direct review.[3] ***See*** 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at conclusion of direct review or expiration of time for seeking further review). Appellant thus had until September 29, 2015, to file a timely PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). He did not file his instant PCRA petition until August 17, 2022, and did not raise his instant time-bar exception and substantive ***Brady*** claims until he filed an amended petition on May 18, 2023.

---

[3] Because the thirty-day deadline for filing a petition for allowance of appeal with our Supreme Court fell on Saturday, September 27, 2014, Appellant would have had until Monday, September 29, 2014, to file the petition. ***See*** Pa.R.A.P. 107 (incorporating by reference the rules of construction in the Pennsylvania Rules of Judicial Administration including Pa.R.J.A. 107(a)-(b), relating to computation of time for rule of construction relating to exclusion of the first day and inclusion of the last date of time period and the omission of the last day of time period which falls on Saturday, Sunday, or a legal holiday); ***see also*** Pa.R.A.P. 1113(a) (general rule setting thirty-day deadline for petitioning for allowance of appeal after entry of Superior Court order).

To obtain review of his untimely PCRA petition, Appellant was required to plead and prove the applicability of one of three statutory exceptions that are found at 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Appellant argues for jurisdiction under the exceptions at Section 9545(b)(1)(i)-(ii), which apply where a PCRA petitioner proves that:

> (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; [or]
>
> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

42 Pa.C.S. § 9545(b)(1)(i)-(ii).

With respect to the governmental interference exception at Section 9545(b)(1)(i), the petitioner "is required to show that but for the interference of a government actor, he could not have filed his claim earlier." **Commonwealth v. Staton**, 184 A.3d 949, 955 (Pa. 2018) (citation and internal quotation marks omitted). As for the newly discovered fact exception, we have noted:

> A PCRA court first must determine whether the facts upon which the claim is predicated were unknown to the petitioner[.] If the PCRA court concludes that the facts were unknown, then the PCRA court must next examine whether the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records. Due diligence demands that the petitioner take reasonable steps to protect his own interests. … The newly-discovered fact exception does not require any merits analysis of the underlying claim, and application of the time-bar exception therefore does not

- 13 -

necessitate proof of the elements of a claim of after-discovered evidence.

***Commonwealth v. Williams***, 324 A.3d 569, 576 (Pa. Super. 2024) (citations and quotation marks omitted).

Pursuant to 42 Pa.C.S. § 9545(b)(2), Appellant also needed to plead and prove that his petition raising his time-bar exception claims was filed within one year of the date his claims "could have been presented." ***Id.***

Appellant treats the police misconduct disclosure notice at issue as proof of prior bad acts evidence concerning Sgt. Woltemate that constituted ***Brady*** material that the Commonwealth withheld from him until they sent him a copy of the notice on April 25, 2023. The substance of his underlying ***Brady*** claim is that the withholding of this evidence for impeachment changed the outcome of his trial because his trial counsel would not have agreed to stipulations concerning, *inter alia*, that the rape kit in this case was lost while in police custody, had counsel known that Sgt. Woltemate had a prior history of "lost evidence." ***See*** Appellant Brief, 10.

Preliminarily, we observe that Appellant overstates the contents of the disclosure notice in identifying his ***Brady*** claim for our purposes. The notice did not suggest that Sgt. Woltemate had previously destroyed evidence. It reflected that, among other things, he was found responsible, in 1988, for loss or damage to *police department property* – rather than evidence – resulting from negligent action or from failure to properly care for same. The other findings on the notice, that the sergeant had made a false statement in response to an official police department investigation and knowingly and

willfully made a false entry in a department report or record, may have been relevant for possible impeachment, assuming that Sgt. Woltemate engaged in a meaningful role in the police investigation in Appellant's case. Based on the information proffered by Appellant to the PCRA court, the only documented involvement by Sgt. Woltemate in the instant case is that he approved a police report completed by Detective Laura Hammond.

Whether the disclosure notice constituted admissible evidence for impeachment, whether its contents were admissible under an exception to Pennsylvania Rule of Evidence 404(b)(1)'s general prohibition on the use of prior bad acts evidence, and whether it constituted **Brady** material are not relevant to our review because the PCRA court never reached the substantive merits of Appellant's **Brady** claim. Here, the PCRA court dismissed the petition for lack of jurisdiction because it found that Appellant did not plead and prove the applicability of the governmental interference and newly-discovered fact exceptions to the PCRA's time-bar. In particular, the court found that "the disclosure notice alone [wa]s not sufficient to demonstrate that the Commonwealth withheld or suppressed evidence of [Sgt.] Woltemate's professional misconduct" and that Appellant did not satisfy his burden under 42 Pa.C.S. § 9545(b)(2) to show that he filed his petition within one year of the date his claims could have been presented. **See** PCRA Court Opinion, 10/15/24, 2-3 (pages unnumbered). Upon review, we are unable to conclude that the PCRA court's findings are supported by the record and free from legal error.

- 15 -

First, the PCRA court's opinion lacks any explanation or reasoning for why the court rejected Appellant's assertion of the newly-discovered fact exception to the time-bar based on the disclosure notice. It merely equates the proffer of the disclosure notice with an allegation of ineffective assistance rather than the evidence of a new fact. *See* PCRA Court Opinion, 10/15/24, 2 (pages unnumbered). The court's stated reference to the report being insufficient to "indicate any active measures taken by the Commonwealth to conceal this information" under the governmental interference exception completely ignored whether the content of the report itself constituted newly-discovered facts for time-bar purposes. *Id.* In the absence of any stated reason for the court's rejection of Appellant's assertion of that time-bar exception, we have no related finding to evaluate under our controlling standard of review.

Second, the record does not support the court's finding that Appellant failed to present his time-bar exception claims concerning the disclosure notice within the one-year deadline set by 42 Pa.C.S. § 9545(b)(2). Here, Appellant filed the amended PCRA petition first addressing the disclosure notice, on May 18, 2023, and acknowledging that he received the notice on April 25, 2023, after it "was passed" to him in the course of his now-stayed federal *habeas* proceeding. Response to Rule 907 Notice, 8/8/24, ¶ 1. The record thus suggests that – to the extent Appellant had any time-bar claims to raise with respect to the disclosure report – he filed his petition less than a month after he first received the report which he supposedly did not previously

know was in existence. **See** Appellant's Brief, 8 ("Appellant was not aware of the disclosure until April 25, 2023 – when it was sent to him"). This was well within the period required by Section 9545(b)(2).[4]

Third, to the extent that the PCRA court rejected Appellant's time-bar claims with respect to the disclosure notice, those rulings are inconsistent with our opinion in **Commonwealth v. Williams**, 324 A.3d 569 (Pa. Super. 2024). In that case, the Philadelphia District Attorney's Office sent defendant Williams, on August 30, 2022, a police misconduct disclosure notice concerning misconduct by one of his arresting officers in an unrelated case. **Id.** at 574. Defendant Williams filed his amended PCRA petition raising an after-discovered evidence claim based on the disclosure notice on November 23, 2022. **Id.** at 573. The Commonwealth, in that case, "argued that, while Williams arguably met the newly-discovered facts exception to the time[-]bar, the underlying after-discovered evidence claim involving [the arresting officer's] misconduct failed on the merits." **Id.** at 574. On appeal from the dismissal of Williams' petition, we addressed the timeliness of Williams' time-bar claims concerning his receipt of the police misconduct disclosure notice.

_____

[4] The PCRA court's opinion is silent as to whether Appellant acted with the requisite diligence to discover the disclosure notice. Instead, the opinion notes that "Petitioner neglect[ed] to articulate the date on which he discovered the purported fact that the Commonwealth suppressed or withheld exculpatory rape kit and cell phone evidence." PCRA Court Opinion, 10/15/24, 3. This assertion, however, has little to do with whether the revelation of the Sergeant's 1988 misconduct and a claim for relief based on it was raised within a year of its discovery in accordance with 42 Pa.C.S. § 9545(b)(2).

We agreed that defendant Williams' claim satisfied the newly-discovered facts exception:

> The district attorney sent the notification to [Williams's] counsel on August 30, 2022, and Williams could not have discovered the evidence of [his arresting officer's] misconduct prior to the receipt of that notification. Moreover, counsel filed a second amended PCRA petition on November 23, 2022, well within the one-year window contemplated by [S]ection 9545(b)(2). Accordingly, the PCRA court properly concluded that it had jurisdiction to consider the merits of Williams' underlying substantive claim.

*Williams*, 324 A.3d at 577. This holding in *Williams* compels our rejection of the PCRA court's time-bar analysis in the instant case. Indeed, Appellant, like Williams, could not have discovered evidence of Sgt. Woltemate's misconduct prior to his receipt of the disclosure notice, and he would meet the newly-discovered fact exception by filing his petition within one-year of receipt of such notice. Because *Williams* compels the finding that Appellant satisfied the newly-discovered facts exception, we do not need to address the alternative application of the governmental interference exception.

We vacate the PCRA court's dismissal order and remand for further proceedings to allow the PCRA court to review, in the first instance, the substantive merits of Appellant's *Brady* claim based on the police misconduct disclosure notice concerning Sgt. Woltemate. Although we note, as stated above, that the misconduct disclosure notice does not implicate Sgt. Woltemate in a prior act of *evidence* destruction, as Appellant suggests, and Sgt. Woltemate's involvement in the instant case is unclear beyond his

approval of a police report, in remanding, we nevertheless express no opinion on the merits of Appellant's *Brady* claim.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/8/2025